**\*\* NOT FOR PUBLICATION \*\***

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| _____ | | |
| NEW JERSEY RET. MERCH. ASSN., | : | **Civil No. 10-5059 (FLW)** |
| | : | |
| Plaintiff, | : | |
| v. | : | **OPINION** |
| | : | |
| SIDAMON-ERISTOFF, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| | : | |
| NEW JERSEY FOOD COUNCIL, | : | **Civil No. 10-5123 (FLW)** |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| STATE OF NEW JERSEY, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |
| | : | |
| AMER. EXP. PREPAID CARD MGMT. CORP., | : | **Civil No. 10-5206 (FLW)** |
| | : | |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| SIDAMON-ERISTOFF, et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**WOLFSON, United States District Judge:**

Presently before the Court is a motion brought by Plaintiffs American Express

Prepaid Card Management Corporation ("AMEX Prepaid"), New Jersey Retail Merchants

Association ("Retail Merchants"), and New Jersey Food Council ("Food Council")

(collectively, "Plaintiffs'"), each issuers of stored value cards ("SVCs"), for construction of

the Court's November 13, 2010 Opinion and Order ("November 13th Ruling"[1]) granting

a preliminary injunction enjoining Defendants Andrew P. Sidamon-Eristoff, Treasurer of

the State of New Jersey ("Treasurer"), and Steven R. Harris, Administrator of Unclaimed

Property of the State of New Jersey (collectively, "Defendants") from enforcing portions

of New Jersey's recent amendment to its Unclaimed Property Law, 2010 N.J. Laws Chapter

25 ("Chapter 25" or "the Act"), codified at N.J.S.A. 46:30B-1, et seq. ("Unclaimed Property

Act"), and portions of the Treasury Guidance dated September 23, 2010.  In the alternative,

Plaintiffs seek another preliminary injunction enjoining Defendants from enforcing the data

collection requirements created by Chapter 25 as well as portions of the Treasury

Announcements dated November 23, 2010 and November 24, 2010.  For the reasons that

follow, the Court clarifies its November 13th Order and denies Plaintiffs' request to enjoin

the data collection provisions of the Act**.**

## I.      BACKGROUND

The facts surrounding Plaintiffs' dispute with Chapter 25 are set forth in great detail

in the Court's opinion dated November 13, 2010.  Since I write for the sake of the parties,

---

[1]      <u>American Exp. Travel Related Services Co., Inc. v. Sidamon-Eristoff</u>, --- F.Supp.2d ----, 2010 WL 4722209 (D.N.J., Nov. 13, 2010).

I recount here only those facts necessary for the disposition of this motion.

In the November 13th Ruling, *inter alia*, this Court enjoined application of the place-of-purchase presumption found in subsection 5c of Chapter 25. The basis for this ruling was that the place-of-purchase presumption is preempted by the federal common law set forth in a series of Supreme Court cases that create a priority scheme for the escheat of abandoned intangible property—the *Texas* line of cases. At the conclusion of this Court's *Texas* preemption analysis, the Opinion stated "[t]he State shall be preliminarily enjoined from applying the place-of-purchase presumption in the Act to SVCs." 2010 WL 4722209 at 45.

Shortly thereafter, on November 23, 2010, the Treasurer issued Treasury Announcement FY 2011-05, which directed all issuers of SVCs to collect and maintain zip code information. This Announcement relied on a separate paragraph found in subsection 5c of the Act, which states "[a]n issuer of a stored value card shall obtain the name and address of the purchaser or owner of each stored value card issued or sold and shall, at a minimum, maintain a record of the zip code of the owner or purchaser." The next day, on November 24, 2010, the Treasurer issued Treasury Announcement FY 2011-06, which extended the effective date for this data collection provision to January 3, 2011. Thereafter, the State appealed the place-of-purchase presumption aspect of the Court's November 13th

3

Ruling.[2]

The instant motion was filed on December 8, 2010, followed by opposition and reply papers. Via a conference call, on December 21, 2010, the Treasurer agreed to further extend the effective date to January 15, 2011, to afford the Court time to consider and rule on Plaintiffs' motion.

II.    DISCUSSION

A.    Construction of November 13th Ruling

Plaintiffs first move for clarification or construction of this Court's November 13th Ruling, citing language in <u>McComb v. Jacksonville Paper Co.</u>, 336 U.S. 187, 192 (1949), stating that a party may petition "the District Court for a modification, clarification, or construction of [a previously-issued] order." There is no provision in the Federal Rules of Civil Procedure for such a motion. However, according to both Federal Rule of Civil Procedure 62(c) and Federal Rule of Appellate Procedure 8(a)(C), a party may move in the district court for "an order suspending, modifying, restoring, or granting an injunction while an appeal is pending." Fed. R. App. Proc. 8(a)(C). The State's appeal of this Court's place-of-purchase presumption is still pending. Thus, I find it appropriate to consider Plaintiffs' request for clarification and construction of the November 13th ruling.

Plaintiffs interpret the November 13th Ruling as enjoining not only the place of

---

[2]    Some plaintiffs appealed other non-place-of-purchase presumption aspects of the Court's November 13th Ruling as well.

purchase presumption found in 5c of Chapter 25, but also the data collection requirement in the preceding paragraph.  Subsection 5c reads as follows:

> An issuer of a stored value card shall obtain the name and address of the purchaser or owner of each stored value card issued or sold and shall, at a minimum, maintain a record of the zip code of the owner or purchaser.

> If the issuer of a stored value card does not have the name and address of the purchaser or owner of the stored value card, the address of the owner or purchaser of the stored value card shall assume the address of the place where the stored value card was purchased or issued and shall be reported to New Jersey if the place of business where the stored value card was sold or issued is located in New Jersey.

As noted, the Order provides that "the State is preliminarily enjoined from enforcing subsection 5c of Chapter 25 and Treasurer Guidance dated September 23, 2010, which apply a place-of-purchase presumption for all stored value cards ...."

### 1.    Plain Language of the Order and Opinion

The Court appreciates that the Order's language could have been more precisely worded, however, when read in context, both the Opinion and the Order make clear that only the place of purchase presumption found in 5c—not the entire subsection—was enjoined.  For one, the Order uses the term "which" to define the aspects of the subsection 5c and the September 23rd Treasury Guidance that were enjoined.  "Which" is defined as "what one or ones (of the number mentioned or implied) ...."  Webster's New Universal Unabridged Dictionary (1979).  By stating "*which* apply a place-of-purchase presumption

5

for all stored value cards," the Order necessarily implies that any non-place-of-purchase presumption clauses found in subsection 5c and the Treasurer's Guidance remain undisturbed by the Order.

The Opinion, which is, of course, expressly referred to in the Order, further makes clear that the Court enjoined only the place of purchase presumption. For one, the entire substance of the Court's discussion of subsection 5c is limited to the place-of-purchase presumption and how that presumption violates the Supreme Court's priority scheme. And, at the conclusion of the *Texas* preemption analysis, the Opinion states "[t]he State shall be preliminarily enjoined *from applying the place-of-purchase presumption* in the Act to SVCs." 2010 WL 4722209 at 45 (emphasis added).

In addition, Plaintiffs point to a colloquy between the Court and the State at the Order to Show Cause hearing preceding the November 13th Ruling, arguing that an SVC issuer's failure to collect zip code data would be inconsequential. In that colloquy, the State suggested that, in the event no zip code was collected by an SVC issuer, the right to custodial escheat "would go first to the corporate domicile; so if it was [a corporation domiciled in New Jersey,] it would come to New Jersey ...." AMEX Prepaid Open. Br. at 11 (quoting Tr., 87:21 - 88:18). When the Court questioned what would occur if the State of corporate domicile did not escheat SVCs, the State responded that, in its view, it had the right to retain the abandoned property "[u]ntil the state of corporate domicile or the proper

6

owner of the property asserts its superior right of escheat." Id.

Plaintiffs argue that, via this colloquy, the State waived any argument that subsection 5c's data collection provision could operate independent of the place of purchase presumption. The Court strongly disagrees. The aforesaid colloquy addresses how the State suggests the place of purchase presumption would apply. It speaks nothing of what would happen in the event the Court invalidated the presumption, but left in place the collection of zip code information. Accordingly, the Court declines Plaintiffs' invitation to read into the colloquy some sort of waiver unsupported by the State's statements at the hearing.

### 2.    Severability

Plaintiffs further argue that the Court should construe the November 13th Ruling as enjoining the data collection provision because that provision cannot be severed from the place-of-purchase presumption. New Jersey Statute 1:1-10 sets forth the law on the severability of unconstitutional portions of a statute:

> If any title, subtitle, chapter, article or section of the Revised Statutes, or of any statute or any provision thereof, shall be declared to be unconstitutional, invalid or inoperative, in whole or in part, by a court of competent jurisdiction, *such title, subtitle, chapter, article, section or provision shall, to the extent that it is not unconstitutional, invalid or inoperative, be enforced and effectuated, and no such determination shall be deemed to invalidate or make ineffectual the remaining titles, subtitles, chapters, articles, sections or provisions.*

7

N.J.S.A. 1:1-10 (emphasis added).

In <u>Affiliated Distillers Brands Corp. v. Sills</u>, 60 N.J. 342 (1972), the Supreme Court of New Jersey succinctly explains the state's severability doctrine as "a question of legislative intent." <u>Id.</u> at 346. To determine that intent, courts must ascertain

> whether the objectionable feature of the statute can be exercised without substantial impairment of the principal object of the statute. To justify severance of a part of a statute there must be such a manifest independence of the parts as to clearly indicate a legislative intention that the constitutional insufficiency of the one part would not render the remainder inoperative.

at 346 (internal quotation marks omitted).

By way of example, the New Jersey Supreme Court in <u>Brady v. New Jersey Redistricting Com'n</u>, 131 N.J. 594 (1992), was faced with congressional redistricting legislation that, among other things, granted the Court original jurisdiction over challenges to the statute. In that case, the Court determined that the jurisdictional provision was severable. In reaching that determination, the Court focused on the overarching purpose of the legislation: "[i]n deciding whether the principle of severability applies, we consider whether the Legislature designed that the enactment stand or fall as a unitary whole." <u>Id.</u> at 607 (internal quotation marks omitted). In that connection, the Supreme Court indicated that it would not "ascribe to the lawmakers a belief that the [entire] Act should fail without [the severed] provision" when the severed provision was

8

"an attractive addition to the bill but not a critical feature." Id. Focusing on the purpose of the entire act, the Court ascertained that "the Legislature would desire that the remainder of the enactment remain in effect despite [the jurisdiction provision's] invalidity." Id. New Jersey Appellate Court decisions following Brady have adhered to this analytical approach. See Cockerline v. Menendez, 411 N.J.Super. 596, 626 (App. Div. 2010); L. Feriozzo Concrete Co., Inc. v. Casino Reinvestment Develop. Auth., 342 N.J.Super. 237, 251-52 (App. Div. 2001).

The primary purpose underlying New Jersey's enactment of its Unclaimed Property Act is

> that all unclaimed property shall be placed into the protective custody of the State Treasurer after the property has remained in the hands of the holder for a specified period of time. The rights of the original party in interest shall not be forfeited or extinguished. The State Treasurer serves as the conservator or trustee of the unclaimed property, acting always, and with full authority, to safeguard and foster the rights of the original owner or party entitled to the property.

Clymer v. Summit Bancorp., 320 N.J.Super. 90, 98 (App. Div. 1998) (quoting Statement to Senate Bill 888 (1983) at 20 (Nov. 23, 1987)) reversed on other grounds by 171 N.J. 57 (2002). By enacting Chapter 25, the Legislature extended the reach of the Unclaimed Property Act to stored value cards. It can be said, then, that a key purpose of enacting Chapter 25 was to ensure that the rights of SVC purchasers will not be forfeited by the passage of time. Keeping intact the data collection portion of Chapter 25 furthers this

9

purpose by making it more likely that the State will be able to reunite the purchaser/owner with the abandoned SVC funds.  In my view, the Act's inclusion of the place-of-purchase presumption was "an attractive addition to the bill but not a critical feature."  <u>Brady</u>, 131 N.J. at 607.

Plaintiffs argue that the data collection provision is so interrelated with the place-of-purchase presumption that the two cannot be severed.  I disagree.  The question is not whether the provisions are interrelated, but whether they are interdependent. Historically, New Jersey courts have described the sort of interdependence that would require invalidation of an entire statute as where different parts of a statute are so "intimately connected with and dependent upon each other so as to make the statute one composite whole ...."  <u>Lane Distr. v. Tilton</u>, 7 N.J. 349, 370 (1951).  <u>See also</u> <u>State by McLean v. Lanza</u>, 27 N.J. 516, 528 (1958); <u>Wilentz v. Galvin</u>, 125 N.J. 455, 458 (1940).[3]  An example of this sort of dependency is that a statute's definitions could not be severed from the remainder of the statute without rendering the statute meaningless or confusing.  <u>Lane</u>,

---

[3] This interdependence rationale is actually part of the legislative intent analysis; it is based on the notion that "an unconstitutional provision in a statute does not affect the validity of a separate article or clause of the enactment, if otherwise valid, unless the two are so intimately connected and mutually dependent as reasonably to sustain the hypothesis that the Legislature would not have adopted the one without the other." <u>Lanza</u>, 27 N.J. at 528.  <u>See</u> <u>Van Cleef v. Comm's of New Brunswick</u>, 38 N.J.L. 320, *3 (1876) ("It has been stated as a rule that all provisions of an act which are dependent, conditional, or connected *so as to warrant the belief that the legislature intended them as a whole*, stand or fall together under the test of the constitutionality of any such provision.") (emphasis added).

7 N.J. at 370; <u>L. Feriozzo</u>, 342 N.J. Super. at 251-53.

Here, unlike the relationship between a statute's definitions and the operational text, the requirement that an SVC issuer obtain the purchaser's zip code is entirely independent from what presumption is applied when no zip code is actually obtained, and the place-of-purchase presumption is applied.  Under the statutory scheme, the place-of-purchase presumption necessarily applies when no address (or zip code) is collected.  On the other hand, the data collection provision focuses on the <u>person who purchased</u> the SVC and aids the State in determining what state is entitled to escheat the SVC in accordance with the *Texas* priority scheme.  The place-of- purchase presumption, by contrast, focuses on <u>where</u> the SVC was purchased and works to override the priority scheme by presuming that the purchaser is a New Jersey resident simply because he/she purchased the SVC in New Jersey.  The effect of excising the presumption does not impede the operation of the data collection provision.  To the contrary, removing the presumption merely frees the data collection provision to operate in a manner consistent with the *Texas* scheme, which focuses on the purchaser/owner.  In short, Chapter 25's data collection provision may operate with or without the place-of-purchase presumption and is, therefore, not dependent upon the presumption.

That the statute is intended to operate with a data collection provision is, further, made clear by referring to other sections of the Unclaimed Property Act.  For example,

N.J.S.A. 46:30B-10.1 directs that "the records of [the] holder" are to be consulted to determine the identity of the owner of the abandoned property. In addition, N.J.S.A. 46:30B-47g grants the Administrator of the Unclaimed Property Act authority to collect from holders "[o]ther information the administrator prescribes by rule as necessary for the administration of the [Act]." Presumably, such information countenances a purchaser's zip code.

Plaintiffs' citations to Affiliated, supra, New Jersey Chapter, Am. Institute of Planners v. New Jersey State Bd. of Professional Planners, 48 N.J. 581, 227 A.2d 313 (1967) ("Professional Planners"), and Washington Nat'l Ins. Co. v. Bd. of Review of N.J. Unemployment, 1 N.J. 545 (1949), are unavailing. Affiliated is distinguishable; the Court in that case was presented with evidence that a severed grandfather clause would deny protection to a large number of manufacturers that the legislature likely intended to save from liability. Here, by contrast, excising the place-of-purchase presumption does not affect the inclusion of SVC issuers in the Unclaimed Property Act, nor the State's ability to identify purchasers/owners for whose benefit the State will hold the funds. Rather, since the presumption does not focus on the purchaser/owner, whereas the data collection provision focuses on the purchaser/owner in order to determine which state has the right to custody of the abandoned funds, the latter provision can stand alone and survives. In Professional Planners, there was specific legislative history indicating that the statute

12

would not have been adopted without the allegedly unconstitutional provision.  48 N.J. at 594-98.  There is no such relevant legislative history here.  Lastly, <u>Washington</u> involved an unemployment insurance law that provided coverage solely to life insurance agents, to the exclusion of agents selling commission-based forms of insurance.  After rejecting the law as unconstitutional, the Court could not sever any unconstitutional portion where the purpose of the statute was "coverage of life insurance agents alone ...."  1 N.J. at 556.  Here, as explained *supra*, severing the place-of-purchase presumption does not vitiate the purpose of the entire Act, which is to reunite purchaser/owners with their abandoned property, and collecting the zip code assists in meeting that objective.  Accordingly, I reject Plaintiffs' argument that New Jersey's severability doctrine requires the Court to enjoin all aspects of subsection 5c of Chapter 25.

### 3. Purchaser v. Owner

In addition, Plaintiffs argue that the Court should construe the November 13th Ruling as enjoining the data collection provision because that provision does not further the Supreme Court's *Texas v. New Jersey* priority scheme.  In Plaintiffs' view, the *Texas* line of cases require States to determine the last known address of the actual owner of the abandoned property in order to properly apply the first priority rule.  As explained in detail in the November 13th Opinion, the Supreme Court created a two-tier priority scheme to govern the escheat of intangible property:

> The first rule provides: "the right and power to escheat the debt should be accorded to the State of the creditor's last known address as shown by the debtor's books and records." This rule is referred to as the "primary rule." Where the creditor's last known address is unknown, or where the last known address is in a state that does not provide for the escheat of the abandoned property, the second priority rule comes into play. That rule, referred to as the "secondary rule," "award[s] the right to escheat to the debtor's State of corporate domicile ...."

2010 WL 4722209 at *32 (internal citations omitted).

Contrary to Plaintiffs' assertions, the *Texas* line of cases clearly authorize States to require issuers of intangible property to collect the last known address of the purchaser and to rely on that address in reuniting the "owner" with the abandoned property.  In both the Pennsylvania v. New York, 407 U.S. 206 (1972), and Delaware v. New York, 507 U.S. 490 (1993), decisions, the Supreme Court expressly stated that "nothing in our decisions 'prohibits the States from requiring [debtors] to keep adequate address records." Delaware, 507 U.S. at 509, n.12 (quoting Pennsylvania, 407 U.S. at 215).  The Supreme Court even stated that such as an approach was advisable, noting that "New York and other states could have anticipated and prevented some of the difficulties stemming from incomplete debtor records" if it had required debtors to maintain better records.  Id.

As to the address obtained, in both of those decisions, the Supreme Court explains that a creditor, in the money order context, "might be *either a payee or a sender*: 'the payee of an unpaid draft, the sender of a money order entitled to a refund,' or a payee or sender

'whose claim has been underpaid through error." <u>Delaware</u>, 507 U.S. at 503 (quoting <u>Pennsylvania</u>, 407 U.S. at 213) (emphasis added).  Just as in the money order context, where either the payee or sender may redeem the money order, either the purchaser of the gift card or the recipient of the gift card may redeem the card.  Indeed, <u>Mann v. TD Bank, N.A.</u>, Civ. No. 09-1062 (RBK/AMD), 2010 WL 4226526 (D.N.J. Oct. 20, 2010), a case cited by Plaintiffs, expressly acknowledges this: "gift cards . . . are a promise by the bank to make payment pursuant to stated terms on behalf of the cardholder; regardless of whether that is the purchaser, recipient, or other authorized card-user."  <u>Id.</u> at *9.  While the purchaser's ownership right may be extinguished once he transfers the card to a recipient, <u>id.</u>, despite this legal maxim, the Supreme Court has consistently permitted states to escheat based on the last known address of the purchaser.  <u>Pennsylvania</u>, 407 U.S. at 215 (defining creditor as the individual who purchased intangible property); <u>Delaware</u>, 507 U.S. at 503 (affirming <u>Pennsylvania</u>'s holding that "Western Union was a 'debtor' insofar as it owed contractual duties to two separate creditors. Western Union was obligated not merely to deliver a negotiable draft to the sender's payee; if Western Union could not locate the payee or if the payee failed to claim his money order, the company was bound to make a refund to the sender.").

     Indeed, under these precedents, it is the location of the purchaser's last known address that determines what state has the right to escheat, <u>Texas</u>, 379 U.S. at 680, and the

data collection provision focuses on that key location.  To be sure, the <u>Texas</u> Court was not troubled by the fact that some purchasers may provide an inaccurate address, i.e., one that does not reflect their true residence at the time of purchase.  <u>Id.</u> at 680-81 ("It may well be that some addresses left by vanished creditors will be in States other than those in which they lived at the time the obligation arose or at the time of the escheat. But such situations probably will be the exception, and any errors thus created, if indeed they could be called errors, probably will tend to a large extent to cancel each other out.").  If the Court was not troubled by an inaccurate address, which might cause the wrong state to obtain custody of the funds, neither would the Court's rulings be offended by a purchaser's post-purchase decision to transfer the property to a party residing in another state.  What was offensive to the Court in <u>Pennsylvania</u> and <u>Delaware</u> was the attempt by states to override the Court's priority scheme by presuming that all property purchased in its state (when no address was on record) had been purchased by a state resident.   Thus, Plaintiffs' arguments that the United States Supreme Court mandates that the primary rule's application requires that the address of the actual owner, and not simply the purchaser, be obtained is without merit.

> ### D.    Injunction of Data Collection Provisions

Finally, Plaintiffs move to enjoin the data collection provisions of the Act pursuant to Federal Rule of Civil Procedure 62(c).  That rule permits district courts to "suspend,

modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights" while an appeal is pending.  Fed. R. Civ. P. 62(c).  In determining whether to grant a motion for injunction pending appeal, a court must consider: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies."   Hilton v. Braunskill, 481 U.S. 770, 776 (1987); Sanofi-Aventis U.S. LLC v. Sandoz, Inc., Civ. No. 07-2762, 2009 WL 1968900, *1 (D.N.J. Jul. 01, 2009).  The burden on the movant under the rule is a "heavy one."  11 Fed. Prac. & Proc. Civ.2d § 2904 cited in Sanofi-Aventis, 2009 WL 1968900 at *2.

The hole in Plaintiffs' argument is that Plaintiffs have not pointed to any constitutional infirmity with the data collection provision.  Because I conclude that the data collection provision is entirely severable from the unconstitutional place-of-purchase presumption, there is no legal basis for this Court to enjoin the enforcement of the data collection provision. To the contrary, collection of the purchaser's last known address has been sanctioned by the United States Supreme Court and is integral to the *Texas* priority scheme.

In terms of irreparable harm, this Court concluded in its November 13th Opinion that Plaintiffs will suffer some harm by virtue of being required to implement Chapter 25

as a whole.  Specifically, the Court stated:

> With respect to the SVC Plaintiffs, this Court has concluded, *supra*, that they have shown a likelihood [of] success on their on their Texas based preemption argument regarding Chapter 25's place of purchase presumption. These plaintiffs, further, argue that they will suffer irreparable harm if required to comply with the law. Were this Court to deny their request for a preliminary injunction, and permit the statute to be enforced, the SVC issuers would face threat of prosecution if they chose not to expend the large amounts of funds necessary to comply with the statute's prospective and retroactive reporting requirements-funds they would not to be entitled to receive back if the statute is later found unconstitutional. For gift card SVC issuers, in particular, they contend that the same holds true for the profits they must remit under the statute. I agree that these bases sufficiently demonstrate irreparable harm.

AMEX, 2010 WL 4722209 at *50.

To the extent this language has been construed by the Plaintiffs to state that they will suffer irreparable harm if forced to comply with the data collection provision, their reading is too broad and not supported by the text.  For one, the opening sentence cabins the irreparable harm inquiry to the place-of-purchase presumption and the remaining language must be understood in that context.  Second, the Plaintiffs did not separately challenge the Act's data collection provision.  Thus, the Court was not called upon to analyze whether that provision alone would lead to irreparable harm.  Now faced with that question, the Court concludes that it does not.  With the place-of-purchaser presumption removed, there is no constitutional right impinged by subsection 5c and,

therefore, no threat that the SVC issuers will be prosecuted for failing to comply with an unconstitutional law.  Plaintiffs argue that they will incur great costs in converting their cash registers to retain zip codes, and the Court appreciates the practical difficulties that certain Plaintiffs may experience.  But the Court also recognizes that Treasurer Guidances permit SVC issuers to file for exemptions for that precise reason.[4]

Furthermore, the issuance of the stay will substantially injure the other parties interested in the proceeding.  Having found no constitutional infirmity, the State stands to be injured by a injunction against the data collection provision when it should be entitled to reunite owners with their abandoned property.  Finally, the potential for reuniting owners with their abandoned property sooner versus later is in the public

---

[4]      N.J.S.A. 46:30B-42.1 provides:

The State Treasurer is authorized to grant an exemption from [the data collection] provisions concerning stored value cards, on such terms and conditions as the State Treasurer may require, for a business or class of businesses that demonstrate good cause to the satisfaction of the State Treasurer. In exercising his discretion pursuant to this section, the State Treasurer may consider relevant factors including, but not limited to, the amount of stored value card transactions processed, the technology in place, whether or not stored value cards issued contain a microprocessor chip, magnetic strip, or other means designed to trace and capture information about place and date of purchase, and such other factors as the State Treasurer shall deem relevant.

19

interest. Thus, consideration of all four factors leads to the causes the Court to conclude that the Plaintiffs have not met their heavy burden, and that an injunction is not warranted.  Accordingly, Plaintiffs' request for preliminary injunction enjoining the data collection provision is denied.

III.    **CONCLUSION**

For the foregoing reasons, Plaintiffs' motion is DENIED.


Dated: January 13, 2011                              /s/ Freda L. Wolfson
                                                     Honorable Freda L. Wolfson
                                                     United States District Judge